SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Attorney for Plaintiff
3 World Financial Center – Suite 400
New York, New York 10281-1022
(212) 336-1023 (Brown)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,  :
                                      :
            Plaintiff,                :
                                      :
      - against -                     :
                                      :    09 Civ. _____ (    )
EDWARD T. STEIN,                      :
                                      :    ECF CASE
            Defendant,                :
                                      :
      - and-                          :
                                      :
DISP, LLC,                            :
EDWARD T. STEIN ASSOCIATES, LTD.,     :
G&C PARTNERSHIP JOINT VENTURE,        :
GEMINI FUND I, L.P.,                  :
PRIMA CAPITAL MANAGEMENT, LLC,        :
VIBRANT CAPITAL CORP., and            :
VIBRANT CAPITAL FUNDING I LLC,        :
                                      :
            Relief Defendants.        :
------------------------------------------------------------------x



RECEIVED APR – 1 2009 U.S.D.C. S.D.N.Y. CASHIERS

## COMPLAINT

Plaintiff Securities and Exchange Commission, for its Complaint against Defendant Edward T. Stein, and Relief Defendants DISP, LLC ("DISP"), Edward T. Stein Associates, Ltd. ("ETSA"), G&C Partnership Joint Venture ("G&C"), Gemini Fund I, L.P. ("Gemini"), Prima Capital Management, LLC ("Prima"), Vibrant Capital Corp. ("Vibrant"), and Vibrant Capital Funding I LLC ("Vibrant Funding") alleges as follows:

## SUMMARY

1.      The Commission brings this emergency enforcement action to halt an ongoing securities fraud perpetrated by Defendant Stein and involving interests he has been selling in two investment funds under his control: Relief Defendants Gemini and DISP (collectively the "Stein Entities"). In what appears to be a classic Ponzi scheme, Stein has moved more than $55 million through the Stein Entities' accounts and sold interests in the Stein Entities to more than 83 investors, commingling their money and using it as needed to pay off older investments, as well as some of his personal expenses. Stein solicited investments for his funds through material misrepresentations and omissions about his track record and investment objectives and has continued to deceive investors by producing statements reflecting healthy returns over the life of their investments. Stein's records are in disarray and he has produced no evidence to date that any of the funds he collected from investors are currently invested.

2.      Stein continues to solicit new investors. As recently as July 2008, an investor's funds were deposited by Stein into Gemini's account.

3.      Stein solicits new investors even though his and the Stein Entities' financial condition appear dire. Indeed, in the last few months, Stein has resorted to outright theft of client funds to keep his scheme going. Beginning in May 2008 and continuing into March 2009, Stein has converted millions of dollars from a single client to pay off Stein Entities' investors and pay personal expenses, including the purchase of a million dollar Manhattan condominium.

## VIOLATIONS

By virtue of the conduct alleged herein:

a. The Defendant, directly or indirectly, has engaged and is engaging in acts, practices and courses of business, that constitute violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a).

b. The Defendant, directly or indirectly, has engaged and is engaging in acts, practices and courses of business that constitute violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

c. The Defendant, directly or indirectly, has engaged and is engaging in acts, practices and courses of business, that constitute violations of Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. 275.206(4)-8.

d. Unless the Defendant is preliminarily and permanently restrained and enjoined, he will continue to engage in the acts, practices and courses of business set forth in this Complaint and in acts, practices and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

4. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), Section 21(d)(1) of the Exchange Act, 15 U.S.C. § 78u(d)(1), and Section 209 of the Advisers Act, 15 U.S.C. §

3

80b-9, seeking to restrain and enjoin permanently the Defendant from engaging in the acts, practices and courses of business alleged herein.

5. The Commission also seeks, as immediate relief, a temporary restraining order and preliminary injunction against the Defendant prohibiting violations of the federal securities laws, freezing the assets of Defendant and the Relief Defendants, ordering Defendants and the Relief Defendants to produce verified accountings, granting expedited discovery, prohibiting the Defendant and the Relief Defendants from destroying or altering documents, and enjoining the Defendant and any third party from filing for bankruptcy on behalf of the Defendant or any of the Relief Defendants without leave of this Court.

6. Finally, the Commission seeks a judgment permanently enjoining the Defendant from future violations of the federal securities laws, ordering the Defendant and the Relief Defendants to disgorge ill-gotten gains with prejudgment interest thereon, and ordering the Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). The Commission also seeks a judgment ordering the Defendant to pay civil money penalties pursuant to Section 209 of the Advisers Act, 15 U.S.C. § 80b-9.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Sections 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa, and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14.

8. Venue is proper in the Southern District of New York pursuant to 15

U.S.C. § 77v(a), 15 U.S.C. § 78aa, 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391. The Defendant, directly and indirectly, has made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. Defendant engaged in many of the acts and transactions alleged herein through communications with investors resident in this District, and he resides here.

## THE DEFENDANT

9. **Edward T. Stein**, age 59, resides in New York, New York. Stein controls all of the operations of Gemini, Prima, DISP, ETSA and Vibrant, either directly, or through an entity he controls. He is not currently registered with the Commission in any capacity. Stein acted as an investment adviser to Gemini and DISP because, for compensation, he advised each entity as to the value of securities or as to the advisability of investing in, purchasing or selling securities. 15 U.S.C. § 80b-2(a)(11).

## THE RELIEF DEFENDANTS

10. **Gemini Fund I, L.P.** was formed by Stein in New York on August 13, 1992 and operates out of Stein's offices in Roslyn, New York. Gemini is a Stein-managed hedge fund, and Stein is its General Partner.

11. **DISP, LLC** was formed by Stein in New York on December 5, 2002 and operates out of Stein's offices in Roslyn, New York. DISP was established to invest in life settlement policies. Stein has transferred all of the life settlement policies in which DISP invested to Vibrant.

12. **Prima Capital Management Corp.** was incorporated by Stein in Delaware on May 30, 1996, and also operates out of Stein's offices in Roslyn, New York. Prima is named as Managing Member of DISP.

13. **Edward T. Stein Associates, Ltd.**, an active New York corporation controlled by Stein, was incorporated on May 20, 1987. It is the entity through which Stein sells life and health insurance.

14. **Vibrant Capital Corp.** is a tax-delinquent Delaware corporation that was incorporated on February 5, 2004. Stein is Vibrant's Chief Executive Officer. Vibrant has acted as a life settlements broker, earning fees for helping other companies locate and purchase at least six life insurance policies for investment purposes. Vibrant owns interests in life insurance policies, some as partial interests arising from certain joint ventures, and others through transfers Stein orchestrated from DISP.

15. **Vibrant Capital Funding I LLC** is an entity that Stein controls and which operates out of Stein's offices in Roslyn, New York. Stein has directed some of the funds he recently misappropriated from a client into an account he controls in Vibrant Funding's name.

16. **G&C Partnership Joint Venture** is an entity that operates out of Stein's offices in Roslyn, New York. Stein has directed some of the funds he recently misappropriated from a client into an account in G&C's name.

## FACTS

17. Beginning in 1992, Stein launched an almost 20 year-long fraud that preyed on his long-time friends and acquaintances. Stein solicited investors to buy interests in two investment entities he managed -- Gemini and DISP -- by

misrepresenting material facts such as the funds' investment objectives and his investment track record. In truth, as alleged below, Stein invested investors' capital in a failed magazine venture (in the case of Gemini) and in insurance policies he transferred for no consideration to Vibrant (in the case of DISP). And, throughout the fraud, he transferred monies from one Stein-related entity to another, using investor funds to pay off earlier investors, as well as his personal expenses. Today, few assets remain in the Stein Entities to pay remaining investors.

18. Facing a dire financial situation, Stein has recently resorted to stealing client funds. Beginning in May 2008 and continuing into March 2009, Stein converted client funds entrusted to him for investment purposes to his own purposes, including the purchase of a $1 million Manhattan condominium.

A. **Stein's Marketing, Sale and Administration of the Gemini Interests**

19. In 1992, Stein set up Gemini as an investment fund and began to market limited partnership interests in it to clients. Over the life of the fund, Stein has moved more than $43 million through Gemini's bank account. At all times, Gemini's assets were managed by Stein as its General Partner, and through the misrepresentations and omissions he made to Gemini investors as detailed below, Stein breached his fiduciary duties to act in the best interests of Gemini and its investors.

(1) Stein Made Material Misrepresentations and Omissions in Marketing Gemini to Prospective and Existing Investors

20. In connection with the interests Stein sold in Gemini, he distributed to at least some prospective investors a Private Placement Memorandum and other offering documents. Stein's Private Placement Memorandum described Gemini as a feeder fund to other investment vehicles engaging in arbitrage and hedge trading. Stein orally

7

represented to other prospective investors that Gemini would engage in an arbitrage strategy. In fact, and unbeknownst to investors, the primary investment Stein made with Gemini money was in Detour Media Group, Inc. ("Detour Media"), an entity that published a fashion magazine called <u>Detour</u>. In a petition signed by Stein as its President, Detour Media filed for protection under Chapter 7 of the bankruptcy laws in 2003.

21. Notwithstanding the failed Detour Media investment, Stein continued to sell interests in Gemini, most recently in July 2008, and knowingly or recklessly failed to disclose the bankruptcy of Detour Media to any existing or prospective Gemini investor. He also knowingly or recklessly failed to disclose to any existing or prospective investor that he had made no other investments of Gemini funds after 2002. And although Gemini has earned little or nothing on the funds investors contributed, Stein has continued to issue Gemini account statements to certain investors that he knows, or is reckless in not knowing, reflect fictitious growth of their Gemini capital accounts over time. Other Gemini investors have been orally reassured by Stein that their Gemini investments are safe and earning returns. Some of the recipients of those falsified statements, that indicated that Stein's investment strategies were successful, subsequently decided to invest more money in Gemini and in Stein's other investment fund, DISP.

    (2)    <u>Money from Newer Investors and Stein's Other<br>Controlled Entities Is Used to Pay Off Gemini Investors</u>

22. Since the Detour Media bankruptcy, Stein has used new Gemini and DISP investor funds, as well as funds he transferred from other entities he controls, to pay off selected Gemini investors, a fact that Stein knowingly or recklessly failed to disclose to

existing or prospective investors. In January 2009, Stein used funds converted from a client to redeem an investment in Gemini.

23. Stein has also used Gemini investor funds to pay his own personal legal expenses, and to fund expenses incurred by ETSA and Prima.

24. Stein continues to solicit Gemini investors. As recently as July 2008, Stein deposited an investor's funds into Gemini's account.

**B.    Stein's Marketing, Sale and Administration of the DISP Interests**

25. Stein set up DISP in 2002 as an investment fund for the stated purpose of acquiring life settlement policies for investment, and named Prima, another Stein-controlled entity, as DISP's Managing Member. At all times, DISP's assets were managed by Stein, and through the misrepresentations and omissions he made to DISP investors as detailed below, and his practice of giving preferential treatment to selected DISP investors, Stein breached his fiduciary duties to act in the best interests of DISP and its investors.

26. In acquiring life settlement policies, DISP would purchase a life insurance policy from an insured or through other entities, in exchange for a cash payment. Once the policy had been transferred to the fund, the fund would keep the policy in force by paying its premiums and would collect the benefit paid under the policy when the insured died. According to DISP's operating agreement -- a document Stein distributed to at least some DISP investors -- DISP investors held an undivided interest in DISP, but no interest in specific DISP-owned policies.

  (1) Stein Made Material Misrepresentations and Omissions in
     Marketing DISP to Prospective and Existing Investors

27. Stein sold DISP interests to more than 40 investors and has moved more than $12 million through its accounts. While DISP bought some life insurance policies with investor funds over the years, it has not bought any since at least May 2004, and Stein transferred the portfolio of policies DISP held to another Stein-controlled entity, Vibrant, without consideration. Stein knowingly or recklessly failed to disclose to existing or prospective DISP investors that he had transferred all of DISP's policies to Vibrant and that he had not purchased any policies since at least May 2004.

28. DISP's operating agreement assured investors that no DISP investor would be given priority in redemptions or distributions. Notwithstanding that provision, Stein has made selected redemptions and distributions to investors since at least 2005, while deflecting other investors' redemption demands. In the last few years, Stein offered still other DISP investors the right to convert their DISP interests into promissory notes from Vibrant. In continuing to distribute the DISP operating agreement after he began making distributions to and redeeming selected investors, Stein knew or was reckless in not knowing that he was disseminating materially false statements about the fund's policies and practices.

29. Some DISP investors had existing or prior investments in Gemini. Stein previously reported fictitious investment returns to these investors on the Gemini statements he created and supplied. Stein knowingly or recklessly failed to disclose Gemini's unsuccessful investment in Detour Media to any prospective DISP investor.

30. As he did with Gemini investors, Stein also issued falsified statements of their interests' value to his DISP investors. In connection with his distribution of 2003

K-1s to DISP investors, Stein fabricated account statements of DISP assets and gave them to the accountant who prepared the K-1s. Knowing or recklessly disregarding that the K-1s had been based on documents he had falsified, Stein nonetheless caused the K-1s to be distributed to existing DISP investors. Stein has reassured other DISP investors orally about the safety of their investment.

      (2)    Money from Investors in Stein's Other Controlled Entities Is Used to Pay Off DISP Investors

31. Stein has funded DISP redemptions to selected investors with funds collected through Prima, a Stein-controlled entity. Stein also used DISP investor funds to pay off Gemini investors. Stein knowingly or recklessly omitted to tell prospective DISP investors that he was funding redemptions and distributions with earlier investors' or other entities' money, rather than earnings flowing from the acquisition of life settlement policies. Nor did he tell prospective DISP investors that he was using DISP funds to pay off earlier investors in Gemini.

### C.    The Stein Entities Have Few, If Any, Assets Left to Pay Investors or Expenses

32. Throughout the existence of the Stein Entities, Stein has commingled their funds with the funds of the other entities he controlled -- ETSA, Prima, and Vibrant -- transferring funds (or assets, in the case of the transfer from DISP to Vibrant of DISP life settlement policies) from one entity to another as needed or desired. He also recently transferred funds converted from a client to Vibrant Funding and G&C. To the extent that Stein transferred client or investor funds or Stein Entities' assets to ETSA, Prima, Vibrant, Vibrant Funding and G&C, those Relief Defendants received funds in which

11

they had no legitimate interest and for which they gave no fair consideration, and they must disgorge them.

33. The Stein Entities have few, if any assets left and their bank accounts show negligible cash balances. Neither Gemini nor DISP has any outstanding investments, and nothing to sell to raise money to pay investor redemptions. As of February 28, 2009, Gemini had a balance of $ $84,870.27; as of December 31, 2008, DISP had a balance of $18.01. Nor do any other Stein-controlled entities have balances above $16,000 for the most recent statement date available.

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act

34. Paragraphs 1 through 33 are re-alleged and incorporated by reference as if fully set forth herein.

35. From at least 1992 through the present, Defendant, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by the use of the mails, directly and indirectly, has employed or is employing devices, schemes and artifices to defraud.

36. From at least 1992 through the present, Defendant, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by the use of the mails, directly and indirectly, has obtained and is obtaining money and property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and have engaged and are engaging in transactions, practices or courses of business which operate as a fraud and deceit upon their investors.

37. Defendant knew or was reckless in not knowing that the representations and omissions set forth herein were false and misleading.

38. By reason of the activities described herein, the Defendant has violated and is violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## SECOND CLAIM FOR RELIEF
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

39. Paragraphs 1 through 33 are re-alleged and incorporated by reference as if fully set forth herein.

40. From at least 1992 through the present, Defendant, in connection with the purchase or sale of securities, directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, has employed and is employing devices, schemes and artifices to defraud; has made and is making untrue statements of material fact and has omitted or is omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and has engaged and is engaging in acts, practices and courses of business which operate or would operate as a fraud and deceit upon investors.

41. Defendant knew or was reckless in not knowing that the representations and omissions set forth herein were false and misleading.

42. By reason of the activities described herein, Defendant has violated and is violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

## THIRD CLAIM FOR RELIEF
### Violations of Sections 206(1), 206(2) and 206(4) of the Advisers Act and Rule 206(4)-8 thereunder

43.     Paragraphs 1 through 33 are re-alleged and incorporated by reference as if fully set forth herein.

44.     From at least 1992 through the present, Defendant, as investment adviser, directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, has employed and is employing devices, schemes and artifices to defraud Gemini and DISP and their respective investors, and has engaged in and is engaging in transactions, practices and courses of business which operated as a fraud and deceit upon Gemini and DISP and their respective investors.

45.     Defendant knew or was reckless in not knowing that the representations and omissions set forth herein were false and misleading.

46.     By reason of the activities described herein, Defendant has violated and is violating Sections 206(1), 206(2) and 206(4) of the Advisers Act, 15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4) and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining Defendant Edward T. Stein, his agents, officers, servants, employees and attorneys and all persons in active concert or participation with them

who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act, 15 U.S.C. §§ 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and from future violations of Sections 206(1), 206(2) and 206(4) of the Advisers Act, 15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4) and Rule 206(4)-8 thereunder, 17 C.F.R. 275.206(4)-8.

## II.

A freeze of all Defendant's and Relief Defendants' assets.

## III.

An Order directing the Defendant and each of the Relief Defendants to file with this Court and serve upon the Commission, within three (3) business days, or within such extension of time as the Commission staff agrees to, a verified written accounting, signed by each Defendant or Relief Defendant under penalty of perjury.

## IV.

An Order permitting expedited discovery.

## V.

An Order enjoining and restraining the Defendant and each of the Relief Defendants, and any person or entity acting at their direction or on their behalf, from destroying, altering, concealing, or otherwise interfering with the access of the Commission to relevant documents, books and records.

## VI.

An Order enjoining and restraining the Defendant and each of the Relief Defendants, and each of their respective officers, agents, employees, attorneys, or other

professionals, anyone acting in concert with them, and any third party from filing a bankruptcy proceeding on behalf of the Defendant or Relief Defendants without at least 3 days notice to the Plaintiff and approval of the Court.

### VII.

A Final Judgment ordering the Defendant and each of the Relief Defendants to disgorge their ill-gotten gains, plus prejudgment interest, and such other and further amount as the Court may find appropriate.

### VIII.

A Final Judgment ordering the Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and Section 209 of the Advisers Act, 15 U.S.C. § 80b-9.

### IX.

Such other and further relief as to this Court deems just and proper.

Dated: New York, New York
March 31, 2009

                SECURITIES AND EXCHANGE
                COMMISSION

By: _____
     Nancy A. Brown

Attorney for Plaintiff
Securities and Exchange Commission
3 World Financial Center - RM 400
New York, New York 10281-1022
Tel: (212) 336-1023 (Brown)